FILED
November 25, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____CM_____
         DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| BRAYAN ARIEL NAVARRETE PERDOMO, § § § Petitioner-Plaintiff, § v. § PAMELA BONDI, et al, § § Respondents-Defendants. § | 5:25-CV-01398-MA |

## OPINION AND ORDER

The Court now considers Petitioner Brayan Ariel Navarrete Perdomo's "Complaint for Declaratory and Injunctive Relief, Petition for Writ of Habeas Corpus."[1] Petitioner, who is currently in immigration detention, alleges that Defendants are holding him in unlawful custody cognizable in habeas corpus under 28 U.S.C. Section 2241 and seeks immediate release or, alternatively, a bond hearing.[2] Upon reviewing the petition, response, and applicable law, the Court **GRANTS** Petitioner's claim **IN PART**.

### I. Factual Background

Petitioner is a citizen and national of Honduras who entered the United States without inspection in 2018, when he was 15 years old.[3] His parents, with whom he had been travelling, promptly returned to Honduras without him.[4] On October 7, 2021, Petitioner obtained court-ordered Special Immigrant Juvenile ("SIJ") classification,[5] which protects children who suffered abuse, neglect, or abandonment and provides them with a pathway to adjust to lawful status when

---

[1] Dkt. No. 1.
[2] Dkt. No. 1, at 8–10.
[3] Dkt. No. 1, at 7.
[4] Dkt. No. 1, at 7.
[5] 8 U.S.C. § 1101(a)(27)(J).

a visa becomes available.[6] Due to an Employment-Based 4th Preference Category (EB-4) visa backlog, Petitioner's March 3, 2021 visa application has not been processed.[7] As of this month, the Department of State is processing EB-4 visa applications from February 15, 2021 and earlier.[8]

Petitioner was involved in a traffic accident in Austin, Texas, on May 19, 2025.[9] Police officers arrived on the scene and discovered that he lacked immigration status.[10] He was then taken into custody by United States Customs and Immigration Enforcement (ICE).[11] Petitioner has been detained by the Department of Homeland Security (DHS) without the possibility of release per a sweeping July 8, 2025 directive ordering that all noncitizens present in the U.S. not admitted or paroled be detained under 8 U.S.C. § 1225(b) without a hearing or possibility of release.[12] On September 5, 2025, the Board of Immigration Appeals (BIA) adopted this directive, effectively stripping immigration judges of the authority to grant a bond hearing or set bond.[13] On April 15, 2019, when Petitioner was 16, the court entered an *in absentia* removal order, of which Petitioner asserts he was not aware.[14] These removal proceedings were reopened *sua sponte* on July 21, 2025.[15] On September 29, 2025, Petitioner moved to terminate his removal proceedings based on his SIJ status and the imminent processing of his EB-4 application, but his motion was denied on October 14, 2025, on a finding that he has not yet successfully adjusted status.[16] Petitioner's final removal hearing is set for December 2, 2025.[17]

---

[6] Dkt. No. 1, at 7.
[7] Dkt. No. 1, at 8, 14.
[8] Dkt. No. 1, at 1–4, at 5.
[9] Dkt. No. 1, at 13.
[10] Dkt. No. 1, at 13.
[11] Dkt. No. 1, at 13.
[12] Dkt. No. 1, at 13.
[13] *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (B.I.A 2025).
[14] Dkt. No. 1, at 8.
[15] Dkt. No. 1, at 13.
[16] Dkt. No. 1, at 1–4, 13.
[17] Dkt. No. 1, at 14; Dkt. No. 1-5, at 2.

Petitioner asserts that he is being detained unlawfully under *Yajure-Hurtado*, which reinterprets § 1225(b)(2)(A) to apply to virtually all inadmissible noncitizens who entered the country without inspection.[18] Petitioner asserts that this current detainment: (1) violates the terms of the Immigration and Naturalization Act (8 U.S.C. § 1225–26); and (2) violates due process.[19] Accordingly, he requests that the Court order his release or find that he is entitled to an individualized bond hearing at which Respondents must demonstrate by clear and convincing evidence that detention is necessary.[20]

Respondents, in turn, argue that Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(1), which allows for the expedited removal of certain noncitizens who were not "physically present in the United States continuously for the 2-year period immediately prior to the date [of custody],"[21] on the argument that Petitioner was originally detained under this section when he entered the United States seven years ago.[22] Respondents additionally argue that Petitioner's release "produces no net gain" because if this Court orders Petitioner's release, "he would be subject to re-arrest as an alien present within the United States without having been admitted."[23] Thus, Respondents assert that they will not release Petitioner unless Petitioner obtains a "grant of relief from removal or an executed removal order."[24] Respondents additionally argue that this Court lacks jurisdiction to review Petitioner's detention, "because his claims directly arise from the decision to commence and/or adjudicate removal proceedings against him."[25]

## II.     Jurisdiction

---

[18] Dkt. No. 1, at 8–9; *see also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025); 8 U.S.C. § 1225(b)(2)(A).
[19] Dkt. No. 1, at 23–25.
[20] Dkt. No. 1, at 10, 22–23.
[21] 8 U.S.C. § 1225(b)(1)(A)(iii)(II).
[22] Dkt. No. 11, at 2–3.
[23] Dkt. No. 11, at 2–3.
[24] Dkt. No. 11, at 2–3.
[25] Dkt. No. 11, at 1, 9–10.

A writ of habeas corpus is used to challenge an arrest, commitment, detention, extradition, bail, or the jurisdiction of a criminal sentence.[26] Under 28 U.S.C. § 2241, district courts may hear habeas corpus challenges to the legality of the detention of aliens.[27] Petitioner is detained in the South Texas Detention Facility in Pearsall, Texas, within the Western District of Texas.[28]

Respondents claim that this Court lacks jurisdiction to review this petition because the circumstances of his mandatory detention are linked to the agency's discretionary decision to commence removal proceedings.[29] Thorough analysis has been done by the Western District of Texas,[30] other district courts,[31] the Fifth Circuit,[32] and the Supreme Court,[33] and all have concluded that the statutes Respondents cite do not limit district court's ability to review petitions challenging Respondents' statutory authority to detain similarly situated Petitioners under § 1225. Petitioner is challenges the constitutionality of the statutory framework by which his detention without bond

---

[26] *See Habeas Corpus*, BLACK'S LAW DICTIONARY (11th ed. 2019); 28 U.S.C. § 2241.
[27] *Rasul v. Bush*, 542 U.S. 466, 473 (2004); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) ("The writ . . . provide[s] a means of contesting the lawfulness of restraint and securing release.").
[28] Dkt. No. 1, at 12.
[29] 8 U.S.C. § 1252(a)(5), (b)(9), (g).
[30] *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *7 (W.D. Tex. Oct. 2, 2025); *Urquiza-Orozco v. Bondi*, No. SA-25-CV-1428-XR, slip. Op., at *4-5 (W.D. Tex. Nov. 18, 2025) (unpublished decision on file with court).
[31] *See, e.g., Lopez Santos v. Noem*, No. 3:25-CV-01193, 2025 WL 2642278 (W.D. La. Sept. 11, 2025); *Guevara v. Swearingen*, No. 25 C 12549, 2025 WL 3158151, at *2 (N.D. Ill. Nov. 12, 2025); *Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3 (S.D. Cal. Nov. 4, 2025). *Escobar Salgado, et al. v. Mattos, et al.*, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *8 (D. Nev. Nov. 17, 2025);
[32] *Texas v. United States*, 126 F.4th 392, 417 (5th Cir. 2025) (finding that § 1225(b)(9) "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined."); *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (finding that § 1252(g) "does not bar courts from reviewing an alien detention order"); *Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022) (finding that § 1252(a)(5) and (b)(9) should not bar courts from reviewing a detention order "where review of any agency determination involves neither a determination as to the validity of [an immigrant's] deportation orders or the review of any question of law or fact arising from their deportation proceedings.").
[33] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999), (finding that it would be "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."); *see also Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (noting that interpreting 1252(a)(9) broadly would render "claims of prolonged detention effectively unreviewable.").

under § 1225 has been mandated "without any process or individualized reasons."[34] Thus, the instant petition sits properly within this Court's jurisdiction.[35]

### III. Analysis

If Petitioner is lawfully detained under 1225(b), then his detention is mandatory.[36] If Petitioner should instead be detained under 1226(a), then he is entitled to an individualized bond hearing at which immigration officers must show by clear and convincing evidence that continued custody during removal proceedings is justified because the noncitizen is a danger to the community or a flight risk.[37]

Section 1225(b)(2)(A) provides:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.[38]

Petitioner argues that this statute only applies to "arriving aliens" (e.g., physical entrants seeking admission at or entering the border), whereas his detention should be governed by 8 U.S.C. § 1226(a).[39] Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) [concerning the "detection of criminal aliens] and pending such decision, the Attorney General
>     (1) may continue to detain the arrested alien; and
>     (2) may release the alien on
>     (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

---

[34] *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *9 (W.D. Tex. Oct. 2, 2025).
[35] *See Jennings*, 583 U.S. at 291–96, (2018) ("The question is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action ….").
[36] *See* 8 U.S.C. § 1225(b)(2)(A).
[37] *See* 8 U.S.C. § 1226.
[38] 8 U.S.C. § 1225(b)(2)(A).
[39] Dkt. No. 1, at 8–9, 12.

(B) conditional parole.[40]

To support his argument that § 1225 applies only to "arriving aliens" while § 1226 governs all other noncitizens living in the United States interior, Petitioner cites the Immigration and Nationality Act (INA) implementing regulations. Those provisions hold that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."[41]

Respondents counter in two main ways. First, they cite the introductory language of § 1225, which states:

> "[F]or purposes of this chapter an applicant for admission [includes] . . . [a]n alien present in the Unites States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters …."[42]

Second, Respondents claim that Petitioner has been detained under § 1225(b)(1), which imposes mandatory detention for:

> "An alien . . . who has not been admitted or paroled into the United States, and who has not . . . been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility …."[43]

Respondents indicate that they will not release Petitioner even if this Court finds his detainment unlawful under § 1225(b)(1) because he "would be subject to re-arrest as an alien

---

[40] 8 U.S.C. § 1226(a).
[41] Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).
[42] 8 U.S.C. § 1225(a)(1).
[43] 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

present within the United States without having been admitted."[44] For this reason, the Court will assess Petitioner's detention under both subsections of § 1225(b).

### a. Petitioner's Detainment under 1225(b)(1)

Respondent's primary argument to support Petitioner's detention under § 1225(b)(1) is that Petitioner "was *initially* arrested within days of his unlawful entry."[45] Respondents fail to note that this detention was seven years ago. Incredibly, Respondents assert that they presently retain the authority to detain him under this provision regardless of the passage of time.

The Court need not discuss the underlying merits of this argument, because it finds Respondents' claim fundamentally implausible on other grounds. In their response, Respondents seem to claim that Petitioner is simultaneously being detained under § 1225(b)(1) but is in "full" removal proceedings.[46] Unfortunately for Respondents, these are mutually exclusive claims.

Section 1225(b)(1) does not and cannot provide "full" removal proceedings to individuals detained under it. It is an expedited removal statute, plainly mandating that "the officer *shall* order the alien removed from the United States *without further hearing or review* unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution."[47] Despite this language, Respondents assert Petitioner is in "full" removal proceedings.[48] Because this is fundamentally impossible under § 1225(b)(1), so is Petitioner's detainment.

### b. Petitioner's Detainment under 1225(b)(2)

Having ruled out the legitimacy of Petitioner's detainment under § 1225(b)(1), the Court now considers the plausibility of Petitioner's detainment under § 1225(b)(2). Over fifty district

---

[44] Dkt. No. 11, at 2–3.
[45] Dkt. No. 11, at 3.
[46] Dkt. No. 11, at 7, 14.
[47] 8 U.S.C. § 1225(b)(1)(A)(i) (emphasis added).
[48] Dkt. No. 11, at 7, 14.

courts have spilled considerable ink on the merits of Respondents' fresh statutory interpretation.[49] A slim minority have agreed with Respondents, finding, for example, that § 1225 should apply to any noncitizen present in the U.S. who has not been admitted, and § 1226 to noncitizens who were once lawfully admitted or paroled but have since become removable.[50] The vast majority, however, have rejected Respondents' position. Some have observed that the legislative record for the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 suggests a Congressional intent to preserve the pre-existing discretionary detention schema for noncitizens living in the United States through § 1226.[51] Many have pointed to Supreme Court dicta on the issue, in which the Court noted: "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under [§§] 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under [§ 1226]."[52] Others have noted that Respondents' new policy contradicts almost three decades of longstanding agency practice, which has always applied § 1226 to noncitizens who had lived in the United States long-term.[53] Others still have found that the new interpretation runs afoul of the United States' immigration system's longstanding practice of "'ma[king] a distinction between

---

[49] *See, e.g.*, *Mboup v. Field Off. Dir. of N.J. Immigr. & Customs Enf't*, No. 2:25-CV-16882 (MEF), 2025 WL 3062791, at *1 & n.3 (D.N.J. Nov. 3, 2025) (collecting cases); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (same); *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sept. 30, 2025) (same); *Morales Chavez v. Dir. of Detroit Field Off.*, No. 25-CV-2061, 2025 WL 3187080, at *7 & nn.5–6 (N.D. Ohio Nov. 14, 2025) (same); *Contreras-Cervantes v. Raycraft*, No. 25-CV-13073, 2025 WL 2952796, at *8 & n.4 (E.D. Mich. Oct. 17, 2025) (same).

[50] *Silva Oliveira v. Patterson, et al.*, No. 6:25-CV-01463, 2025 WL 3095972 (W.D. La. Nov. 4, 2025); *Guzman Cardenas, v. Almodovar, et al.*, No. 25-CV-9169 (JMF), 2025 WL 3215573, at *2 (S.D.N.Y. Nov. 18, 2025) (collecting cases).

[51] *See, e.g.*, *Vazquez v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *15 (D. Nev. Sept. 17, 2025) (citing H.R. Rep. No. 104-469, pt. 1, at 229; *see also* H.R. Rep. No. 104-828, at 210) ("In enacting [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996], Congress specified that § 1226(a) simply restated the discretionary detention authority applicable to all noncitizens present in the U.S. pending deportability proceedings ….").

[52] *Jennings*, 583 U.S. at 289.

[53] *See, e.g.*, *Escobar Salgado, et al. v. John Mattos, et al.*, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *3 (citing 62 Fed. Reg., at 10323).

those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of [] legality.'"[54] Generally persuasive as this Court finds these arguments, it is on the shoals of statutory interpretation that Respondents ultimately wreck.

The Court's first task in interpreting § 1225's meaning "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."[55] As many district courts have noted, despite § 1225's broad introductory language, § 1225(b)(2) is intricately tied to the border admissions process, with detention triggered upon "inspection by an immigration officer . . . if the immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted."[56] The statutes carve-outs for "crewm[e]n" and "stowaways,"[57] and the language assigning inspecting officers the authority to "board and search any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brough into the United States"[58] or to order persons of authority on "a vessel or aircraft bringing an alien (except an alien crewmember) to the United States"[59] are similarly preoccupied with various methods of initial arrival.[60] Petitioner was not "seeking admission" before an immigration officer when he was detained; therefore, he cannot be detained under § 1225(b)(2).[61]

---

[54] *Martinez v. Hyde,* 792 F. Supp. 3d 211, 222 (D. Mass. 2025) (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)) (internal citations omitted).
[55] *Salazar v. Maimon*, 750 F.3d 514, 518 (5th Cir. 2014) (quoting *Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438, 450 (2002) (internal citations omitted)).
[56] 8 U.S.C. § 1225(b)(2)(A)(emphasis added).
[57] 8 U.S.C. § 1225(b)(2)(B)(i)–(iii).
[58] 8 U.S.C. § 1225(d)(1).
[59] 8 U.S.C. § 1225(d)(2).
[60] *See Vicente Acosta Yupangi v. Hale et al*. No. 2:25-CV-884, 2025 WL 3207070 (D. Vt. Nov. 17, 2025).
[61] *See Puerto-Hernandez v. Lynch*, No. 1:25-CV-1097, 2025 WL 3012033 (W.D. Mich. Oct. 28, 2025); *see also Urquiza-Orozco v. Bondi*, No. SA-25-CV-1428-XR, slip. Op., at *7-8 (citing *Martinez v. Mukasey*, 519 F.3d 532, 544 (5th Cir. 2008), as amended (June 5, 2008) ("Under th[e] statutory definition, 'admission' is the lawful entry of an alien after inspection, something quite different, obviously, from post-entry adjustment of status." (Emphasis in original))).

Further, even where § 1225(a)(1)'s broad definition of "applicants for admission" seems "unambiguous when viewed in isolation," it sits in clear tension with the rest of the statutory scheme.[62] "'It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'"[63] Respondents' interpretation of § 1225(a)(1) would not only significantly reduce § 1226(a)'s applicability,[64] it would nullify portions of § 1226 added by Congress earlier this year to impose mandatory detention on certain noncitizens living in the United States long-term when they have been charged with a crime.[65] The Court finds it difficult to dismiss such muddied statutory interplay as mere "redundancy"[66] where the longstanding interpretation of the statutes permits such a clear alternative.

In sum, seeing no reason to defer to the Respondents' novel interpretation[67] and finding that it would strain the canons of statutory interpretation beyond reasonable bounds to entertain it, this Court cannot accept Respondents' claim that it is authorized to detain Respondent under either provision of § 1225. Though some courts, upon finding the same, have gone on to evaluate Petitioner's rights under § 1226, this Court declines to do so. Respondents do not argue that Petitioner is detained under § 1226, or that he would not be entitled to the writ if he was. The Court sees no reason to invent arguments on their behalf. Petitioner's detainment is unlawful under the only law that Respondents claim authority to detain him and its plausible alternative. Release is proper.

---

[62] *Puerto-Hernandez v. Lynch*, No. 1:25-CV-1097, 2025 WL 3012033, at *8–9; *see also Escobar Salgado, et al. v. John Mattos, et al*, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *12.
[63] *Gundy v. United States*, 588 U.S. 128, 140–41 (2019)
[64] *Lopez Santos v. Noem*, No. 3:25-CV-01193, 2025 WL 2642278, at *4 (W.D. La. Sept. 11, 2025).
[65] Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025) (amending 8 U.S.C. § 1226(c)) (Laken Riley Act); *see also Puerto-Hernandez v. Lynch*, No. 1:25-CV-1097, 2025 WL 3012033, at * *Puerto-Hernandez v. Lynch*, No. 1:25-CV-1097, 2025 WL 3012033, at (analyzing § 1225's scope in light of the 2025 Laken Riley Act).
[66] Dkt. No. 11, at 9.
[67] *See Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 403, 412–13 (2024).

## IV. Attorney's Fees

Petitioner requests attorney's fees under the Equal Access to Justice Act ("EAJA").[68] Because fees under the EAJA are not available in habeas corpus proceedings like this one, the Court is unable to grant this request.[69]

## CONCLUSION

Accordingly, the Petition for Habeas Corpus is **GRANTED**. It is **ORDERED** that:

1. Respondents **RELEASE** Petitioner from custody, under appropriate conditions of release, to a public place by **no later than November 26, 2025 at 10 a.m.;**

2. Respondents **NOTIFY** Petitioner's counsel of the exact location and exact time of Petitioner's release as soon as practicable and no less than two hours before his release;

3. If Petitioner is re-detained pursuant to Section 1226, all applicable procedures must be followed, including that Petitioner be afforded a bond hearing;

4. The parties shall **FILE** a Joint Status Report **no later than 4:00 p.m. on November 26, 2025**, confirming that Petitioner has been released.

A final judgment will issue separately.

IT IS SO ORDERED.

DONE this 25th day of November, 2025, in San Antonio, Texas.

_____
MICAELA ALVAREZ
SENIOR UNITED STATES DISTRICT JUDGE

---

[68] 28 U.S.C. § 2412(d)(1)(A).
[69] *Barco v. Witte*, 65 F.4th 782 (5th Cir. 2023).